IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LANNA J. MEYERS                                          PLAINTIFF

        v.                          No. 05-5218

HARTFORD LIFE & ACCIDENT                                DEFENDANT
INSURANCE COMPANY

## MEMORANDUM OPINION & ORDER

This disability benefit claim is before the Court for decision on the stipulated administrative record (Doc. 7) and the stipulated supplement to the record (Doc. 10), as well as respective briefs of the parties (Docs. 8 and 11). Plaintiff brings this action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that Defendant's decision to deny her claim for long-term disability benefits was unreasonable. For the reasons stated below, the Court finds that Defendant's decision was supported by substantial evidence and is **AFFIRMED**. Plaintiff's claim is denied and Plaintiff's Complaint (Doc. 1) is dismissed with prejudice.

## Background

Plaintiff worked for Wal-Mart Stores, Inc. from 1987 to 2004. She held the position of Buyer/Assistant Buyer from 1987-2000 and that of Planogram Manager from 2000-2004. Plaintiff's last day at work was March 2, 2004. Plaintiff contends she quit working due to back pain, extreme fatigue, leg pain, chronic diarrhea, incontinence, muscle and joint

aches and pain.

Plaintiff's primary physician was Dr. James Baker, D.O., who primarily diagnosed her condition as Churg-Strauss syndrome, interstial [sic] lung disease, and peripheral neuropathy. (Rec. 51). On March 24, 2004, Dr. Baker stated Plaintiff had the following limitations: standing for 10 minutes maximum; walking with use of a cane and for no more than 15 minutes; sitting for a limit of 15 minutes due to pain and paresthesia; and lifting/carrying a 20 pound maximum. (Rec. 52). On May 19, 2004, in a letter to Geraldine Martinez, R.N., Dr. Baker stated that Plaintiff would not be able to function in a sedentary type occupation full time. (Rec. 115). Dr. Templeton, a pulmonary specialist, also treated Plaintiff. He stated on February 12, 2003 that Plaintiff's pulmonary fibrosis and Churg-Strauss syndrome appeared to be stable. (Rec. 91). In the records of the February 12th visit, Dr. Templeton noted that "she has been doing fairly well since her last visit." (Rec. 91). Meyers was not prescribed any new medications for her Churg-Strauss syndrome and was to return in one-year for a check-up. The record does not reflect Plaintiff ever returned to Dr. Templeton.

Dr. Baker, in response to a questionnaire submitted to him by Defendant, stated that he, likewise, believed

Plaintiff's pulmonary fibrosis was "stable." (Rec. 114). Dr. Baker submitted this response in his Attending Physician's Statement three weeks after Plaintiff ceased working. (Rec. 114). Dr. Moon conducted an MRI of Plaintiff's spine in 2003. In a May 2004 response to Defendant, Dr. Moon stated that nothing in Plaintiff's medical findings precluded her from returning to her own sedentary occupation. (Rec. 123). Dr. Moon limited Plaintiff's lifting capacity to 20 pounds and stated there was no limit in her driving a vehicle. Also, she could sit two hours if she would change positions as needed. On May 21, 2004, Dr. Moon confirmed his opinion that Plaintiff could perform her sedentary job in his response to Hartford's request for additional information. (Rec. 117). Plaintiff was also examined by Dr. Gallaher, a Neurologist, in 2003. Dr. Gallaher opined that the MRI failed to "provide a good explanation for her symptoms." (Rec. 157).

**Discussion**

Under ERISA, a denial of benefits by a plan administrator must be reviewed *de novo* unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the administrator's decision is reviewed for an abuse of discretion. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998) *citing Firestone Tire & Rubber Co. v. Bruch*, 489

U.S. 101, 115 (1989). Accordingly, the Court must be guided by the language of the plan to determine the proper standard of review.

The Plan provides, in pertinent part, "[t]hat Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." Therefore, Hartford's decision can only be reviewed for an abuse of discretion.

The Eighth Circuit Court of Appeals has "variously defined . . . an abuse of discretion as being 'extremely unreasonable,' 'virtually' the same as arbitrary and capricious, and 'extraordinarily imprudent.'" *Shell v. Amalgamated Cotton Garment*, 43 F.3d 364, 366 (8th Cir. 1994) (citations omitted). "The proper inquiry into the deferential standard is whether 'the plan administrator's decision was reasonable; i.e., supported by substantial evidence.'" *Cash v. Wal-Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir. 1997) *(*quoting *Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996)).

"While the word 'reasonable' possesses numerous connotations, this court has rejected any such definition that would 'permit a reviewing court to reject a discretionary trustee decision with which the court simply disagrees[.]'"

*Id.* at 641 (citation omitted). A decision is reasonable "if 'a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision.' If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." *Id.* (citation omitted).

Where there is a difference of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to find that the employee is not disabled unless "the administrative decision lacks support in the record, or . . . the evidence in support of the decision does not ring true and is . . . overwhelmed by contrary evidence." *Donaho*, 74 F.3d at 901 (8th Cir. 1996).

The Court must first determine whether Defendant abused its discretion by finding Plaintiff able to perform the duties of her occupation, and if no abuse is found then the analysis is over. Plaintiff contends her chronic pain and limited mobility render Defendant's decision unreasonable as she is not capable of performing the essential duties of her former occupation or any occupation for which she is qualified by

education, training, or experience[1]. Defendants contend Plaintiff never demonstrated she was unable to perform the functions of her own occupation. (Rec. 288).

Defendants relied on Plaintiff's own version of her job description in her long-term disability application, and a copy of the Job Description for Planogram Manager obtained from Wal-Mart, to determine her eligibility. (Rec. 102 and 288). Plaintiff indicated that her work involved completing layouts for clubs, preparing reports, meetings, and presentations. Defendants contend that Plaintiff submitted a variety of conditions in her application for long-term disability benefits, but none of these, alone or combined, prevented Plaintiff from performing her sedentary job.

According to the medical records, Plaintiff suffered from Churg-Strauss syndrome, pulmonary fibrosis, and lower back pain. (Rec. 91-92). However, Dr. Templeton's long term findings indicated that Plaintiff's conditions appeared to be stable (Rec. 91), and he never placed any limitations on Meyers. Dr. Baker completed an Attending Physician Statement in support of Meyers's application for benefits and reported

---

[1]Plaintiff submitted her application for long-term disability benefits and stated that she suffered from "degenerative spine, chronic diarrhea, incontinence bladder and bowel, Drop foot, Churg strauss granuloma, Interstial (sic) lung disease, Ocular migraines, chronic neck and back pain, leg and feet fall asleep, numb, neuropathy." (Rec. 44). However Plaintiff's medical records indicate that these were all secondary diagnoses that were never reported as disabling by her treating physicians.

that Plaintiff was being treated for Churg-Strauss and peripheral neuropathy. (Rec. 51). Dr. Baker also reported that Plaintiff's pulmonary conditions were stable, and he informed the reviewing doctors, Lyon and Siegel, by telephone that Plaintiff's pulmonary conditions did not prevent her from performing a sedentary job. (Rec 158, 161 and 280). Plaintiff never needed home oxygen therapy and her oxygen saturation was normal; i.e. her saturation was 94% on March 24, 2004. (Rec. 287). Dr. Baker reported that Plaintiff could breathe on her own with no evidence of pulmonary symptoms.[2] (Rec. 158-59; 161; 283-284).

According to Hartford, the job description for Plaintiff obtained from Wal-Mart indicated that no lifting, standing, or walking was required for Planogram Manager. This interpretation conforms to the required skills of the job, i.e. knowledge of merchandising, analytical skills, ability to draw in Excel, and the ability to read blueprints. (Rec. 102). Nonetheless, while the job description did not require any walking, Hartford did verify that "sitting with light walking" was necessary. (Rec. 106).

Plaintiff's lumbar degenerative disc disease did not prevent her from performing her job. Dr. Steven Moon,

---

[2]Plaintiff has continued to smoke cigarettes, although she has reported to her doctors that she has tried to stop. (Rec. 117).

Neurologist, treated Plaintiff for her disc disease, and his treatment included an MRI of Plaintiff's lower back that was reviewed by Dr. Regan Gallaher, Neurosurgeon. (Rec. 93). Dr. Gallaher reported that Meyers was "able to easily stand from sitting position and able to walk with a cane." (Rec. 281). In the January 2005 report by Dr. Baker, he indicated that Plaintiff had developed an irregular gait but failed to identify any occupational limitations for Plaintiff. (Rec 175). However in July 2004, three months after Plaintiff had ceased working, Dr. Baker reported to Dr. Lyon that Plaintiff had a regular gait. (Rec. 161). Further, Dr. Baker's 2005 letter indicated that Plaintiff walked without any assistance because she used the cane only intermittently. (Rec. 279).

Dr. Moon reported to Hartford that no medical evidence supported Plaintiff's claim of inability to function as Planogram Manager. (Rec. 123). Dr. Moon agreed that Plaintiff could lift/carry 20 pounds, had no limit to driving, and could sit two hours and get up to change positions as necessary. (Rec. 123). Dr. Baker also reported to Hartford that Plaintiff's lower back pain did not prevent her from sedentary work. (Rec. 161).

In July 2004, Dr. Baker indicated to Dr. Lyon that from an objective and medical perspective Plaintiff appeared to "retain capacity for full-time sedentary to light demand work

with the retained ability to lift up to ten (10) lbs. occasionally." (Rec 161). The Court concludes it was reasonable for the Defendant to determine that Plaintiff's lumbar degenerative disc condition did not prevent her from performing her own occupation.

Moreover the Court finds the Defendant's decision supported by other substantial evidence[3]. Plaintiff is "independent with activities of daily living and instrumental activities of daily living," according to Dr. Baker. (Rec. 284). Plaintiff has never requested "any visiting nurse of home care services, including chore services, meal preparations services, home health aid services, or transportation services." (Rec. 284). Plaintiff's doctors have never imposed any limitations for reaching or for working overhead, pushing, pulling, driving, or keyboard use/repetitive hand motion." (Rec. 52). Dr. Baker made it clear that Plaintiff was not restricted from driving in his response to Hartford. (Rec. 115).

Dr. Baker indicated his reasons to support his initial opinion that Plaintiff could perform her job were "patient has other issues with urine and bowel irritation problems." (Rec.

---

[3]While not dispositive, the Court notes that Plaintiff's application for Social Security Benefits was denied. Although applying a different standard, the Social Security Administration determined that Plaintiff's condition "was not severe enough to keep her from working and she possessed the ability to return to the types of jobs [she had] performed in the past." (Rec. 128).

115). Plaintiff was not being treated for these problems. Finally, the limitations imposed by her treating physicians still allow for Plaintiff to perform the duties and functions described in the Planogram Manager Job Description. (Rec. 280).

## Conclusion

Although the Plaintiff suffers from several medical problems, the Court affirms the decision of the plan administrator and finds it supported by the substantial evidence of the record. Plaintiff's Complaint is dismissed with prejudice with each party to bear its own fees and costs.

IT IS SO ORDERED this 1st day of November, 2006.

*/s/ Robert T. Dawson*
Robert T. Dawson
United States District Judge